

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOUIS A COFFELT JR., | Case No. ED CV 17-1684 FMO (SHKx) |
| Plaintiff, | |
| v. | **ORDER DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE** |
| AUTODESK, INC., | |
| Defendant. | |

Having reviewed and considered all the briefing filed with respect to defendant Autodesk, Inc.'s ("defendant") Motion to Dismiss Plaintiff Louis A. Coffelt Jr.'s ("plaintiff") Second Amended Complaint, (Dkt. 39, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**INTRODUCTION**

Plaintiff, proceeding pro se, filed his operative Second Amended Complaint, (Dkt. 35, "SAC"), on January 3, 2018. Plaintiff asserts six causes of action for copyright infringement against defendant, and one cause of action against, inexplicably, Sony Imageworks, a non-party to this proceeding. (See Dkt. 35, SAC at ¶¶ 115-80). Plaintiff alleges that: (1) he "is the author of [p]hotorealistic computer aided design," (id. at ¶ 6); (2) "[p]hotorealistic CAD images [did] not exist prior to [plaintiff's] copyrighted works," (id. at ¶ 8); (3) he holds valid, registered copyrights to the works allegedly infringed, (see id. at ¶ 38); and (4) defendant accessed plaintiff's works in 2010, 2011, and 2013, through its "significant relationship" with the California Department of

Corrections and Rehabilitation ("CDCR").  (Id. at ¶ 106).  According to plaintiff, between 2010 and 2014, he invested more than 10,000 work hours into developing his copyrighted works, which entitles him to $33 billion in damages, or approximately $3.3 million per hour of work.  (See id. at ¶¶ 7 & 182).

**LEGAL STANDARD**

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007) ("Twombly"); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) ("Iqbal"); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010).  Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 810 (1994) (plurality opinion), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395

2

U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Pro se pleadings are "to be liberally construed" and are held to a less stringent standard than those drafted by a lawyer. Erickson, 551 U.S. at 94, 127 S.Ct. at 2200; Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596 (1972) (per curiam); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("Iqbal incorporated the Twombly pleading standard and Twombly did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under Iqbal."). Nevertheless, dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

## DISCUSSION

This is not the first time the parties to this proceeding have engaged in litigation; previously, plaintiff sued defendant, NVIDIA Corporation, and Pixar for patent infringement. This prior action, Coffelt v. NVIDIA Corp., 2016 WL 7507763 (C.D. Cal. 2016) ("Coffelt I"), filed on March 14, 2016, concerned U.S. Patent No. 8,614,710 ("'710 patent") (filed Aug. 22, 2011) (issued Dec. 24, 2013) ("Method for Deriving Pixel Color Using Steridians"). On June 21, 2016, Coffelt I was dismissed for lack of patentable subject matter pursuant to Fed. R. Civ. P. 12(b)(6), and subsequently affirmed in Coffelt v. Nvidia Corp., 680 F.Appx. 1010 (Fed. Cir.) (per curiam), cert. denied, 137 S.Ct. 2143 (2017).

Defendant contends that plaintiff is attempting to circumvent the adverse judgment rendered in Coffelt I by "re-styl[ing] those [patent] allegations as arising under copyright law and then fil[ing] a new action with this Court." (Dkt. 39, Motion at 17). Notably, the '710 patent had a Cooperative Patent Classification ("CPC")[1] of "G06T 15/50 (G06T = image data processing or

---

[1] "The Cooperative Patent Classification System is a joint initiative by the USPTO and the European Patent Office to create a common, internationally compatible classification system for technical documents. This system allows patent examiners to sort particular patent publications

generation; 15/50 = 3D lighting effects) and a U.S. Patent Classification ("USPC")[2] of "345/426" (345 = computer graphics processing and selective visual display system; 426 = lighting/shading). In other words, though ultimately found to lack patentable subject matter, see Coffelt I, 2016 WL 7507763, at *8, the '710 patent, like the copyrighted works at issue here, was also directed to a system for "[p]hotorealistic computer aided design[.]"  (Dkt. 35, SAC at ¶ 6).

I.     COPYRIGHT INFRINGEMENT.

Plaintiff alleges that the copyrighted works at issue are computer source codes directed to the efficient rendering of three-dimensional images and "photorealistic" shading effects through ray tracing techniques and various algorithms, and that the protected works have been infringed by Open Shading Language ("OSL").[3]  (See Dkt. 35, SAC at ¶¶ 39-50).  Defendant maintains that the SAC advances an implausible "access" theory, that plaintiff seeks to impose copyright liability on "unprotectable ideas," and that the failure of plaintiff's direct infringement claims necessarily defeats his secondary vicarious and contributory claims.  (See Dkt. 39, Motion at 8-16).

To state a valid claim for direct copyright infringement, a complaint must plausibly allege two primary elements:  (1) ownership of a valid copyright; and (2) unlawful copying.  See Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361, 111 S.Ct. 1282, 1296 (1991) ("Feist") ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.");

into common categories, making it easier to compare applications and locate similar existing patents." Front Row Technologies, LLC v. NBA Media Ventures, LLC, 125 F.Supp.3d 1260, 1274 n. 8 (D. N.M. 2015).

[2]  "The PTO maintains the [USPC] for organizing patent documents by common subject matter.  Each subject matter division in the USPC includes a major component called a class and a minor component called a subclass.  A class generally delineates one technology from another. Subclasses delineate processes, structural features, and functional features of the subject matter encompassed within the scope of a class.  Every class has a unique alphanumeric identifier, as do most subclasses." Amgen Inc. v. F. Hoffman-La Roche Ltd., 580 F.3d 1340, 1347 n. 1 (Fed. Cir. 2009); see 35 U.S.C. § 8 (granting legal authority for adopting a patent classification system to the USPTO Director).

[3]  Open Shading Language, or "OSL," is a shader programming language developed by Sony Imageworks in 2010 that defendant states is supported in some of its software products. (See Dkt. 39, Motion at 10).

Rentmeester v. Nike, Inc., 883 F.3d 1111, 1116-1117 (9th Cir. 2018) (same); Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) ("[D]irect infringement requires proof of unlawful copying[.]").  "[T]he second element has two distinct components: 'copying' and 'unlawful appropriation.'"  Rentmeester, 883 F.3d at 1117.  In the absence of direct or literal copying (i.e., carbon copy or virtual replica), a "presumption of copying" may be raised through plausible allegations of access and substantial similarity.  See Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000), cert. denied, 531 U.S. 1126 (2001) ("Three Boys Music"); Atari Games Corp. v. Nintendo of America Inc., 975 F.2d 832, 844 (Fed. Cir. 1992) ("Atari Games") ("Even in the absence of verbatim copying, a copyright owner may show infringement by showing that the infringer had access to the work and that the two works are substantially similar.") (internal quotation marks omitted).  As to the "unlawful" component, the allegations must be sufficient to permit a reasonable inference that "protectable elements of expression" found within the protected work have been copied.  Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994), cert. denied, 513 U.S. 1184 (1995) ("Apple Computer").  While a complaint need not "specify each and every instance of infringement," it should provide "a representative sampling of infringed content," or "representative infringements," so that the court may "meaningfully evaluate the plausibility of [the plaintiff's] allegations" concerning the alleged misappropriation.  Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co. Ltd., 149 F.Supp.3d 1167, 1174-75 (N.D. Cal. 2015) ("Blizzard Entertainment"); see Apple Computer, 35 F.3d at 1443 ("The plaintiff must identify the source(s) of the alleged similarity between his work and the defendant's work.") (emphasis original).

>   A.   Access to Copyrighted Works.

Because the SAC does not allege direct copying, (see, generally, Dkt. 35, SAC), plaintiff must, to raise a presumption of copying, put forth plausible allegations of access and substantial similarity.  See Three Boys Music, 212 F.3d at 486.  Here, plaintiff  alleges that defendant had access to plaintiff's works by reviewing his patent publication, and through defendant's "significant

relationship" with the CDCR.[4]  (See Dkt. 35, SAC at ¶¶ 105-06).  Plaintiff also alleges that: (1) in "about" 2010, 2011, and 2013, CDCR agents "forcefully took copies" of plaintiff's work; and (2) that plaintiff "will" provide evidence of this "significant relationship" and "unauthorized copy[ing]" to the court.  (See id. at ¶¶ 106-09).

As an initial matter, there is virtually no overlap between the business activities of defendant and that of the CDCR, so as to allow a natural inference of access.  (See Dkt. 39, Motion at 10 (pointing out the lack of overlap in business activities)).  Defendant's business is developing software applications, see Vernor v. Autodesk, Inc., 621 F.3d 1102, 1104 (9th Cir. 2010), cert. denied, 565 U.S. 820 (2011) ("Autodesk makes computer-aided design software used by architects, engineers, and manufacturers."), whereas the CDCR's business, as its name suggests, is in developing and rehabilitating incarcerated individuals.  The essence of plaintiff's contentions in this regard amount to "because I say so . . . proof to follow."  (See, e.g., Dkt. 35, SAC at ¶ 30 ("Coffelt's CAD Work comprises a combination of Coffelt's Vector Work, Coffelt's Gradient Work, and Coffelt's Steradian Work.  Therefore, Discovery will show Autodesk is either committing acts of direct copyright infringement, contributory infringement, or has vicarious liability, in regard to Coffelt's CAD Work."); id. at ¶ 106 ("Autodesk has a significant relationship with CDC.  Evidence of this significant relationship will be provided to this Court."); id. at ¶ 107 ("CDC agents forcefully took copies of Coffelt's Work.  Evidence of this unauthorized copy of Coffelt's copyrighted work will be provided to this Court.")).  However, "[t]o prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work."  Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1143 (9th Cir. 2009).  Plaintiff's "[t]hreadbare recitals of the elements of a cause of action,

---

[4]  Plaintiff did not discuss his theory relating to defendants reviewing his patent application. (See, generally, Dkt. 42, Opposition to Motion ("Opposition")).  In effect, plaintiff has conceded and/or abandoned this argument.  See, e.g., GN Resound A/S v. Callpod, Inc., 2013 WL 1190651, *5 (N.D. Cal. 2013) (stating, when plaintiff failed to oppose a motion as to a particular issue, that "the Court construes as a concession that this claim element [is] not satisf[ied]"); Hall v. Mortg. Investors Grp., 2011 WL 4374995, *5 (E.D. Cal. 2011) ("Plaintiff does not oppose Defendants' arguments regarding the statute of limitations in his Opposition.  Plaintiff's failure to oppose . . . on this basis serves as a concession[.]").

supported by mere conclusory statements, do not suffice[.]" Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1949-50.  Access cannot reasonably be inferred from implausible and conclusory allegations of a "significant relationship" between two entities engaged in wholly divergent activities.  (See Dkt. 35, SAC at ¶ 106).  Accordingly, the court finds that plaintiff has failed to allege copying because the SAC fails to plausibly allege defendant's access to plaintiff's copyrighted work.

 B. Unlawful Copying of Copyrighted Works.

 Even assuming access, "the second Feist prong, regarding copying of constituent elements of an original work, requires plaintiff[] to allege that the works at issue are substantially similar in their protected elements." Blizzard Entertainment, 49 F.Supp.3d at 1172-73 (internal quotation marks omitted).  Copyright protects the tangible expression of an idea, not the idea itself, and hence the "idea/expression dichotomy." Golan v. Holder, 565 U.S. 302, 328, 132 S.Ct. 873, 890 (2012).  In recognizing the "vital distinction between ideas and expression, courts have routinely held that the copyright for a work describing how to perform a process does not extend to the process itself." Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC, 803 F.3d 1032, 1037-38 (9th Cir. 2015).  Stated differently,

> [t]he description of the art in a book, though entitled to the benefit of copyright, lays no foundation for an exclusive claim to the art itself.  The object of the one is explanation; the object of the other is use.  The former may be secured by copyright.  The latter can only be secured, if it can be secured at all, by letters-patent.

Id. at 1037 (internal quotation marks omitted).

 The SAC seeks to establish a presumption of copying based on OSL's "equivalent" ray tracing methods and vector algorithms used to calculate pixel color and generate photorealistic three-dimensional ("3D") shading effects.  (See Dkt. 35-1, Exh. 121 at ECF 851-61) (repeatedly asserting that the infringing works are "equivalent" to plaintiff's source codes).  Plaintiff repeatedly points to the "identical" results rendered by his works and the infringing one, and how the infringing source code uses "equivalent" means to generate "identical results[.]"  (See Dkt. 35, SAC at ¶¶ 20, 36, 71, 72 & 104; see also Dkt. 35-1, Exh. 121 at ECF 845-61).  These allegations

make clear plaintiff's belief that protections afforded under patent law – such as the doctrine of equivalents – apply with equal effect in the copyright realm.

Plaintiff's belief, however, is misplaced, for there is no copyright law doctrine equivalent to patent law's doctrine of equivalents.  See Harney v. Sony Pictures Television, Inc., 704 F.3d 173, 183 (1st Cir. 2013) ("The question before us is whether the equivalence between the works can support a copyright infringement claim."); id. at 188 (finding that mere equivalence is not sufficient because "the question of infringement is governed not merely by whether the copy mimics the plaintiff's work, but . . . more importantly, by whether the similarity arises from protected elements of the original").  So while a computer program may seek protections under both patent and copyright law, the relative protections offered are distinct.  "Title 35 protects the process or method performed by a computer program; title 17 protects the expression of that process or method. While title 35 protects any novel, nonobvious, and useful process, title 17 can protect a multitude of expressions that implement that process."  Atari Games, 975 F.2d at 839.  Consequently, "a defendant incurs no liability if he copies only the 'ideas' or 'concepts' used in the plaintiff's work. To infringe, the defendant must also copy enough of the plaintiff's expression of those ideas or concepts to render the two works 'substantially similar.'"  Rentmeester, 883 F.3d at 1117.

Here, the SAC and its attached exhibits allege nothing more than substantial similarity between OSL and plaintiff's formerly patented idea of using ray tracing and vector algorithms in a particular way to generate realistic 3D shadow graphics.  (See Dkt. 35, SAC at ¶¶ 20, 36, 71, 72 & 104).  Again, "[c]opyright protects the tangible expression of an idea, not the idea itself," Golan, 565 U.S. at 328, 132 S.Ct. at 890, so whatever substantial similarities may exist between the ideas expressed by OSL and plaintiff's codes is irrelevant.  In short, the court finds that plaintiff has not plausibly alleged unlawful copying where the only "facts" pertaining to "copying" concern unprotectable elements of the work.

C.     Secondary Copyright Liability.

"Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party."  A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 n. 2 (9th Cir. 2001); see Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1169 (9th Cir. 2007) (stating

that as a "threshold matter," a copyright plaintiff must first establish direct infringement before proceeding to issues of secondary infringement).  Because the court concludes that the SAC fails to state a claim for direct copyright infringement, plaintiff's claims for secondary infringement necessarily fail.

II.    LEAVE TO AMEND.

Rule 15 of the Federal Rules of Civil Procedure provides that the court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); see Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (The policy favoring amendment must "be applied with extreme liberality.").  However, "[i]t is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802 (1971).  This discretion is guided by an examination of several factors, including whether:  (1) the amendment causes the opposing party undue prejudice; (2) the amendment is sought in bad faith; (3) the amendment causes undue delay; (4) the amendment constitutes an exercise in futility; and (5) the plaintiff has previously amended his or her complaint.  See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 n. 3 (9th Cir. 1987).

Having liberally construed and assumed the truth of the allegations in the SAC, the court is persuaded that plaintiff's copyright claims cannot be saved through amendment.  See Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely.").  Title 17 U.S.C. § 102(b) states that "[i]n no case does copyright protect[] . . . any idea, procedure, process, system, method of operation, concept, principle, or discovery . . . described, explained, illustrated, or embodied in [the copyrighted] work."  "A software copyright protects the computer programmer's expression of the idea, whereas a software patent protects the actual processes or methods embodied in the software."  CCP Systems AG v. Samsung Electronics Corp., 2010 WL 5080570, *4 (D.N.J. 2010) (citing Apple Computer, Inc. v. Franklin Computer, Corp., 714 F.2d 1240, 1252 (3d Cir. 1983), cert. dismissed, 464 U.S. 1033 (1984)).  This "idea/expression or fact/expression dichotomy, [which] applies to all works of authorship[,]" reflects not just the statutory "essence of copyright," Feist, 499 U.S. at 349-

50, 111 S.Ct. at 1290 (internal quotation marks omitted); more importantly, it reflects the constitutional directive that Congress pass such laws so as "[t]o promote the Progress of Science and useful Arts[.]"  U.S. Const., Art. I, § 8, cl. 8; see Feist, 499 U.S. at 349, 111 S.Ct. at 1290. Granting leave to amend would do no more than allow plaintiff to continue his attempts to circumvent the purpose of copyright protections by superimposing patent law protections onto his copyrighted works.  (See, e.g., Dkt. 35, SAC at ¶ 104) ("A comparison of EXHIBIT 136 shows [defendant's] surface shading is identical to [plaintiff's] surface shading on the cylinder."). Plaintiff's allegations of copying bear no relation to protectable elements of his source codes, and indeed, his own exhibits  demonstrate that the "copying" alleged pertains only to the ideas underlying his copyrighted works and not the tangible expression of those works.  (See, e.g., id. at ¶ 36) ("[I]dentical results[] is substantial evidence showing [defendant] is committing acts in violation of 17 U.S.C. § 501, is liable for contributory copyright infringement, or has vicarious liability, directed to [plaintiff's] copyrighted works.").

Additionally, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."  Acri v. Int'l Assoc. of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir.), cert. denied, 479 U.S. 816 (1986).  Even taking into account the additional "facts" raised in plaintiff's declaration, (see Dkt. 43, "Coffelt Decl."), accompanying his Opposition to the Motion, the court's finding of futility remains unchanged.  Under the circumstances, it would be futile, unfair, and prejudicial to afford plaintiff a fourth opportunity to state his claims, particularly since the proposed amendments appear to be "facts" that have been known to plaintiff since the inception of this case.[5]

In short, leave to amend will not be granted because plaintiff has been given ample opportunity to amend, and because the allegations in plaintiff's operative complaint conclusively

---

[5] Moreover, as defendant notes, the paragraphs plaintiff references in his declaration do not relate to any alleged actions by defendants but only to actions taken by the CDCR in 2011 and 2013.  (See Dkt. 48, Reply at 3 (citing Dkt. 43, Coffelt Decl. at ¶¶ 7-8)).  There is nothing in those paragraphs establishing any link between the CDCR and defendant.

establish that no "unlawful copying" has occurred within the meaning of the Copyright Act.  See Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."); Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003), cert. denied, 541 U.S. 1043 (2004), overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir.) (en banc), cert. denied, 552 U.S. 985 (2007).

## CONCLUSION

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1.  Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint **(Document No. 39)** is **granted**.

2.  The Second Amended Complaint **(Document No. 35)** is **dismissed without leave to amend**.

3.  Judgment shall be entered accordingly.

Dated this 30th day of September, 2018.

/s/
Fernando M. Olguin
United States District Judge